UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

U.S. BANK,

                          Plaintiff,

          v.

ILDA, LLC *et al.*,

                         Defendants.

13-cv-3082

**OPINION**

    U.S. Bank National Association, acting as an indenture trustee, brings this interpleader action to determine which creditor has priority in certain assets held by U.S. Bank. Two interpleader defendants, from different classes of creditors, move for summary judgment based on their interpretation of the indenture agreement.

**Facts**

    This case turns on the proper interpretation of an indenture governing the rights of holders of notes issued by Alesco Preferred Funding XV, Ltd. Alesco issued different classes of notes secured by a pool of collateral. The classes of notes include Class A-1 Notes and Class A-2 Notes, among others. U.S. Bank acts as the Indenture Trustee.

    Interpleader defendant ILDA, LLC is a holder of Class A-1 notes. Interpleader defendants Montrose Credit I, LLC; Montrose Credit II, LLC; Montrose Credit III, LLC; and Montrose Credit IV, LLC (collectively, "Montrose Credit") are holders of Class A-2 notes.

    The Indenture sets the order of priority for payment of interest and principal to the note holders. In the ordinary course, the Indenture subordinates Class A-2 notes to Class A-1 notes

1

only with respect to principal. In other words, after the trustee pays outstanding interest on the Class A-1 notes, the trustee must pay interest on the Class A-2 notes before paying any principal on the Class A-1 notes.

The question in dispute is whether, after an event of default and acceleration, holders of Class A-1 Notes must be paid in full before holders of Class A-2 Notes receive payments of interest. Section 13.1(c) of the Indenture states:

> Anything in this Indenture or the Notes to the contrary notwithstanding, the Co-Issuers and the Holders of the Class A-2 Notes agree for the benefit of the Holders of the Class A-1 Notes that with respect to payments of principal the Class A-2 Notes and the Issuer's rights in and to the Collateral (with respect to the Class A-1 Notes, and as applied to this paragraph, the "Subordinate Interests") shall be subordinate and junior to the Class A-1 Notes to the extent and in the manner set forth in this Indenture including as set forth in Section 11.l(a) and hereinafter provided. If any Event of Default has not been cured or waived and acceleration occurs in accordance with Article V, including as a result of an Event of Default specified in Section 5.l(f) or (g), the Class A-1 Notes shall be paid in full in Cash before any further payment or distribution is made on account of the Subordinate Interests.

On December 2, 2010, an event of default occurred, and the trustee delivered notice to the appropriate parties. The Indenture contains an acceleration clause, and a majority of the controlling class of notes directed acceleration on August 26, 2011.

The trustee interpreted § 13.1(c) of the Indenture to require payments of interest to holders of A-2 notes before Class A-1 notes received payments of principal. Section 13.1(c), the trustee reasoned, defines "Subordinate Interest" as Class A-2 notes only with respect to payments of principal. Accordingly, from September 2011 through September 2012, the trustee made nearly $950,000 in interest payments to holders of Class A-2 notes.

On December 10, 2012, ILDA sent a letter to the trustee, asserting that the Indenture required the trustee to pay ILDA and other Class A-1 note holders in full—interest and

principal—before Class A-2 note holders could receive any payment. On December 12, 2012, the trustee responded, explaining its continued belief that it was properly paying interest on Class A-2 notes before paying principal on Class A-1 notes. A second round of similar letters followed.

On December 19, 2012, the trustee sent a notice to the note holders, stating its intention to reserve amounts equal to the interest payments on Class A-2 notes because of ILDA's objection. The trustee then commenced this interpleader action, seeking to settle all claims to those reserved funds. ILDA and Montrose Credit both moved for summary judgment.

## Discussion

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). It is the moving party's burden to show that no genuine factual dispute exists. Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223 (2d Cir. 1994). When language contained in a contract is clear, the court is to give effect to the contract and grant summary judgment without reference to extrinsic evidence. U.S. Trust Co. of New York v. Alpert, 10 F. Supp. 2d 290, 299 (S.D.N.Y. 1998). Ambiguity is not created simply because the parties urge different interpretations of a contract. U.S. Trust Co. of New York v. Jenner, 168 F.3d 630, 632 (2d Cir. 1999).

Here, the contract is not ambiguous and summary judgment is appropriate. The plain language of the Indenture supports Montrose Credit's interpretation of the contract. Section 13.1(c) defines "Subordinate Interests" in the first sentence of the section: "with respect to payments of principal the Class A-2 Notes . . . ." In the second sentence of § 13.1(c), the

Indenture states that, following default and acceleration, Class A-1 notes are entitled to "be paid in full in Cash before any further payment or distribution is made on account of the Subordinate Interests." Thus, the Class A-2 notes are only subordinate to Class A-1 notes "with respect to payments of principal."

This conclusion is consistent with three canons of grammatical construction. First, the rule of the last antecedent provides that, absent evidence of a contrary intention, a limiting clause or phrase should ordinarily be read as modifying the noun or phrase that immediately follows. See Barnhart v. Thomas, 540 U.S. 20, 26 (1993). Here, "with respect to payments of principal" is immediately followed by "the Class A-2 Notes," indicating that the phrase is meant to modify the Class A-2 notes. Thus, when "Subordinate Interests" is defined to include the Class A-2 notes, that definition also includes the modifier "with respect to payments of principal."

Second, the court strives to interpret the contract to ensure that no phrase or clause is rendered superfluous. Cf. TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001). Here, interpreting "with respect to payments" as modifying "Class A-2 notes" gives the phrase meaning. Conversely, if "Class A-2 Notes" is not modified by "with respect to payments of principal"—as ILDA suggests, then the phrase becomes mere surplusage; it serves no purpose in the sentence. The court will give effect to the phrase that the drafters included in the Indenture by reading "with respect to payments of principal" as a modifier.

Third, the canon of construction *expressio unius est exclusio alterius* holds that to express one thing implies the exclusion of another. Cf. Marx v. Gen. Revenue Corp., 133 S. Ct. 1166, 1175 (2013). Here, the definition of Subordinate Interests in § 13.1(c) of the Indenture specifically lists payments of principal, but not payment of interest, indicating that the Indenture subordinates only principal and not interest.

4

Relatedly, "with respect to payments of principal" is included in the definition of Subordinate Interests in § 13.1(c), but the phrase is omitted in a parallel provision of Section 13 of the Indenture, § 13.1(d). This section describes the subordination of another class of notes. Section 13.1(d) is substantially similar to § 13.1(c), but does not include the qualifying language "with respect to payments of principal." When a contract includes a phrase in one provision but not in another parallel provision, the court presumes that the drafters acted intentionally and intended a difference in meaning. Cf. Loughrin v. United States, 134 S. Ct. 2384 (2014); Sebelius v. Cloer, 133 S. Ct. 1886 (2013). Thus, the court concludes that the inclusion of "payments of principal" in § 13.1(c) is significant and intended to subordinate Class A-2 notes only with respect to principal.

Accordingly, the court finds that § 13.1(c) of the Indenture requires payment of interest to holders of Class A-2 notes before the trustee may make payments of principal on Class A-1 notes. The court interprets the unambiguous, plain language of § 13.1(c) of the Indenture to require this result. The court's interpretation is bolstered by canons of statutory construction, making this reading the only reasonable conclusion.

In opposing this conclusion, ILDA primarily relies on two arguments. First, ILDA argues that because § 13.1(c) states that "the Class A-1 Notes shall be paid in full in Cash before any further payment or distribution is made on account of the Subordinate Interests," Class A-1 holders must receive both interest and principal payments before any payments to Class A-2 holders. To support this argument, ILDA cites cases where courts have held that "paid in full" means the payment of both interest and principal. True enough, "paid in full" may require payment of both interest and principal. But focusing solely on that language ignores the rest of the clause, which only gives Class A-1 notes priority over the "Subordinate Interests," defined as

5

Class A-2 notes "with respect to payments of principal." The cases cited by ILDA are inapposite because those cases interpreted contracts with materially different language than the Indenture before the court in this case. Here, "paid in full" is qualified by the fact that the subordinate interests only includes payments of principal, not payments of interest. The court gives meaning to all the language of the contract without interpreting the "paid in full" clause to conflict with the rest of the section.

Second, ILDA relies on the general principle that in the event of a default senior notes should be paid in full prior to junior notes. Accordingly, ILDA argues that as a holder of Class A-1 notes, it should be paid in full before holders of Class A-2 notes. But general principles of creditor seniority cannot trump the express language in the Indenture in this case. Here, the Indenture dictates that Class A-2 notes are entitled to payments of interest before Class A-1 notes are entitled to payments of principal.

## Conclusion

Montrose Credit's motion for summary judgment is granted. ILDA's motion for summary judgment is denied. This opinion resolves the motions listed as document numbers 23 and 27 in this case.

So ordered.

Dated:   New York, New York
         August 29, 2014

/s/ Thomas P. Griesa
Thomas P. Griesa
United States District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/29/14

6